**Pages 1 - 19**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before the Honorable Haywood S. Gilliam, Jr., Judge

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>          )<br>     Plaintiff, )<br>          )<br>  vs.     )<br>          )<br>JAMES PHILIP LUCERO, )<br>          )<br>     Defendant. )<br>_____ ) | **No. CR 16-0107 HSG**<br><br>Status Hearing |

                                   Oakland, California
                                   Monday, December 4, 2017
                                   2:02 p.m.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:        ALEX G. TSE
                      UNITED STATES ATTORNEY
                      450 Golden Gave Avenue, 11th Floor
                      San Francisco, California 94102
                 BY:  **PHILIP JOSEPH KEARNEY, JR.**
                      **ASSISTANT UNITED STATES ATTORNEY**


For Defendant:        OFFICE OF THE FEDERAL PUBLIC DEFENDER
                      1301 Clay Street, Suite 1350N
                      Oakland, California 94612
                 BY:  **ANGELA M. HANSEN, ATTORNEY AT LAW**
                      **NED SMOCK**
                      **ASSISTANT FEDERAL PUBLIC DEFENDERS**



Reported By:   Sarah Goekler, CSR No. 13446, RMR, CRR, CCRR
               Pro Tem Reporter
  *Proceedings recorded by mechanical stenography; transcript
          produced by computer-aided transcription*

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | **Monday, December 4, 2017**                    **2:02 p.m.** |
| 2  | **P R O C E E D I N G S**                                    |
| 3  | ---o0o---                                                    |
| 4  | **THE CLERK:** Calling CR 16-00107, the United States of     |
| 5  | America v. James Philip Lucero.                              |
| 6  | Please step forward and state your appearances for the       |
| 7  | record, please.                                              |
| 8  | **MR. KEARNEY:** Your Honor, Phil Kearney for the United     |
| 9  | States. Good afternoon.                                      |
| 10 | **THE COURT:** Good afternoon, Mr. Kearney.                  |
| 11 | **MS. HANSEN:** Good afternoon. Angela Hansen on behalf      |
| 12 | of Mr. Lucero, who's present and out of custody.             |
| 13 | **THE COURT:** Good afternoon, Ms. Hansen.                   |
| 14 | **MR. SMOCK:** Good afternoon, Your Honor. Ned Smock,        |
| 15 | also on behalf of Mr. Lucero.                                |
| 16 | **THE COURT:** Good afternoon, Mr. Smock.                    |
| 17 | All right. So I put this on, as you saw in my order, to      |
| 18 | talk about the parties' views of the impact of the *Robertson* |
| 19 | opinion that the Ninth Circuit issued recently. It's rare that |
| 20 | I get something as on point as this in the middle of a case, |
| 21 | but we did.                                                  |
| 22 | And I know, based on the Government's filing, that they      |
| 23 | have a supplemental brief that they'd like to file, and I think |
| 24 | that likely makes sense. Part of what I wanted to talk about |
| 25 | is whether the defense wants to file something. And, if so,  |

how quickly you could do it.

But, really, for today's purposes what I want to get a read on is whether, in the view of the parties, *Robertson* removed areas of dispute. It's my read that it likely does. I know you may or may not agree on that. But, really, for purposes of finalizing the instructions and working through the other pretrial matters that are pending, that was the question. And that's why I asked you to meet and confer on it.

**MR. KEARNEY:** And we did meet and confer, Your Honor.

Honestly, I don't think there was a lot of agreement. I'd invite Ms. Hansen to correct me if I'm wrong. But, as the Court noted, the Government did prepare a brief -- a very short one with exhibits from the *Robertson* case, which I think are helpful to Court and counsel. They include -- I'd like to file that now, if I may, sir.

They include the jury instructions that were given in *Robertson* --

**THE COURT:** Which I've seen already. I have those.

**MR. KEARNEY:** -- and the transcript of expert testimony that was taken in *Robertson* as well. And it's there for the Court's analysis.

As we stated in our brief, sir -- and, again, we try to be very brief in the brief. The Government believes that *Robertson* sheds direct light on four major areas that are still in contention before us.

1   I don't know if the Court would like me to go through
2   those at this point or not, but I could do that very briefly.
3       **THE COURT:** Why don't you say -- just list the four,
4   in your view.
5       **MR. KEARNEY:** Well, the first is that *Healdsburg* is
6   still good law. In fact, the *Robertson* Court deemed it
7   critical. Why the Government believes that's important is
8   because *Healdsburg* is a case that states very matter of
9   factually that adjacent wetlands to a T&W are jurisdictional,
10  just period.
11      The second aspect of *Robertson* that directly applies to
12  issues before this Court is the fact that I think the issue of
13  what part of *Rapanos* controls has been put to rest. It's
14  certainly Kennedy's concurrence.
15      And I would --
16      **THE COURT:** So in that regard, you would agree at
17  this point that the alternative construction that you proposed
18  before is out?
19      **MR. KEARNEY:** Well, sir, the -- at Attachment C to
20  the filing I just gave the Court, the Government has papered a
21  proposed instruction without the plurality to submit to this
22  Court.
23      Frankly, sir, we -- in an abundance of caution, our
24  original Instruction 51 probably is -- if you actually held me
25  down and asked me which one we would pursue, that would be the

one.  But we certainly understand after *Robertson* the Court --
I know this Court had some questions about that approach.  So
we prepared a new version of 51 without plurality, just for the
Court's review.  We would just submit that to the Court.

I would note, sir, that there are aspects of
Justice Kennedy's concurrence that I think are particularly
interesting.  I'm not going to go -- these have been briefed
extensively.  I do want to read a quote from page 780 of
*Rapanos*:  "For wetlands adjacent to navigable waters, a
significant nexus does not need to be established, whether by
inference or otherwise.  Instead, jurisdiction is established
without any inquiry beyond adjacency."

So, again, as the Government said in several briefs now,
if you have a wetland adjacent to a T&W, as we argue is the
case here, that alone provides jurisdiction.

**THE COURT:**  In your view, would the instructions in
the *Robertson* accommodate that or no?

**MR. KEARNEY:**  No, because *Robertson* was not -- as the
Court remembers from *Robertson*, the wetlands in question and
the tributary in question in *Robertson* were actually three
bodies of water removed from a T&W.  I think there was
Cataract Creek, the Boulder River, and the Jefferson River
involved.  So there was no issue of wetlands adjacent to a T&W.
The wetlands were adjacent to two things that fit into a T&W.
Very different from our case.

1       The third broad category that the Government believes
2  Kennedy clears up is the mental state instructions.
3       In *Robertson*, the instructions that were given to that
4  jury --
5           **THE COURT:**  I saw -- I read it.
6           **MR. KEARNEY:**  Okay.  And that was -- they were
7  described as clear instructions by the Ninth Circuit.
8       And then, finally, experts were allowed to opine or to
9  give a broad array of opinions, including whether something was
10 a water of the United States, whether something was adjacent,
11 whether something has a continuous surface connection, whether
12 something had a significant nexus to something else.  All those
13 areas are highlighted in the brief with direct -- pointing
14 towards areas of the transcript that are relevant to those
15 issues.
16          **THE COURT:**  All right.  So, Ms. Hansen, the first
17 question to you is whether you want to respond to this brief,
18 and, if so, how much time do you need to do it?
19          **MS. HANSEN:**  Your Honor, I would say that we would
20 like to review it.  And then, if we need to respond, we could
21 do so in a week.
22      I don't know -- for example, the experts.  I think that
23 issue could be clearly addressed today.  I'm not so sure we
24 need to respond to that, because I think there's a clear answer
25 in *Robertson*.

1    As for Issue Number 2 about what controls, Mr. Smock is
2 going to be arguing jury instructions, Your Honor, so I'll turn
3 to him for that.  But I think during our meet and confer we did
4 confirm that we agree that *Robertson* sets forth the significant
5 nexus test, as Your Honor was inclined to follow, in fact,
6 ruled applied.  So that was an area that we had agreed to.  So
7 it would only be Points 1 and 3 that might need a response, if
8 at all.
9    But, again, I will let Mr. Smock address the jury
10 instructions, and I will be handling the expert issues,
11 whichever order the Court would prefer.
12         **THE COURT:**  What do you see as the two alternatives,
13 the expert issue and the mens rea, essentially?
14         **MS. HANSEN:**  Right.  And the *Healdsburg* -- I'm sorry.
15 There are three.
16    *Healdsburg*, the Government trying to expand the adjacency
17 argument here, sort of conflating abutting adjacency.  That's
18 Number 1.  Number 2 would -- they tagged as Number 3 would be
19 the mental state issue and whether *Robertson* addressed that.
20 We have a response to that that we could do orally today.  And
21 Number 4 is the expert issues that we've fully briefed and how
22 *Robertson* impacts that.
23    We are prepared to orally argue them today.  Having not
24 read their papers, there might be something we need to respond
25 to.

1    **THE COURT:** Okay. I don't need a ton of additional
2 argument. I've read your papers. I think I get the parties
3 disagree as to the impact of *Robertson* in terms of whether
4 anything that was disputed is no longer disputed. It doesn't
5 sound like there's anything in that category. And so I'm
6 essentially where I was.
7    **MS. HANSEN:** Right. The significant nexus test,
8 Your Honor, I think is no longer disputed. Although, we still
9 believe that the Scalia test is appropriate, we do believe this
10 Court has to follow controlling Ninth Circuit law, which is --
11    **THE COURT:** All right.
12    **MS. HANSEN:** -- now *Robertson*, and it's --
13    **THE COURT:** All right.
14    **MS. HANSEN:** So that's where we have --
15    **THE COURT:** All right. That's fine. I'll let you be
16 heard.
17    Obviously, I did read the jury instruction from *Robertson*
18 on the mens rea question. I understand your -- you'll have to
19 preserve whatever argument you preserve. But it does appear
20 that that was ratified, in essence, as a clear statement of the
21 elements.
22    **MR. SMOCK:** So, Your Honor, why don't I start by just
23 talking about the mens rea element.
24    Our position is that *Robertson* didn't address mens rea.
25 And that's largely, if not entirely, because the defense didn't

1  raise that in the case.  In fact, we spoke by phone with
2  counsel for Mr. Robertson and asked him that very question,
3  whether knowledge was an issue in the case.  And it didn't come
4  as much surprise that he said that that wasn't raised, largely
5  because that case mirrors the facts of a lot of the cases that
6  we see previous to this.
7      It was a case in which there had been a warning to him
8  from a special agent that this was likely a covered property.
9  So there was never an argument in that case that there should
10 be a knowledge requirement.  And it's for that reason that it's
11 not included in the instructions.  In the *Robertson* case itself
12 in the Ninth Circuit, there's no discussion of that issue.
13 It's simply an indication that the instructions that were
14 issued were okay.
15         **THE COURT:**  But I -- again, I take your point in
16 terms of preserving your position, but Instruction 14 directly
17 said the Government's not required to prove Joseph David
18 Robertson's knowledge of the law, not required to prove that he
19 knew that the material came within the legal definition of
20 pollutant, et cetera.  So warning or no warning.  And
21 understanding that that issue may not have been raised
22 specifically in *Robertson*, the instructions given did, by my
23 reading, address this question of what type and level of
24 knowledge is required.
25         **MR. SMOCK:**  And our position is that the

1   Ninth Circuit didn't directly rule on that issue.  This wasn't
2   something that was raised to them.  And I think that -- so for
3   that reason, *Robertson* doesn't stand for the proposition that
4   that aspect of the jury instructions is necessarily appropriate
5   under the factual scenario in this case.  And I think that's
6   why it's incredibly important for this Court to understand what
7   an outlier this case is.
8        The cases that we've seen that are argued by the
9   Government are cases in which defendants were dealing with
10  noxious substances, sewage, chemicals, et cetera, cases in
11  which they were businesses, cases in which they were warned
12  repeatedly by officials that what they were doing was harming
13  wetlands.
14       What we have here is something that's entirely different,
15  and that's why this case can't be treated as a public welfare
16  offense.  I'm new to this case.  And when I learned about the
17  case and heard that it was a case involving alleged pollution
18  of wetlands, my reaction in imagining what this scenario was,
19  was I think what any layperson would think, which is we must be
20  talking about something that looks like what one would imagine
21  a wetland would like look:  Water, a connection to a larger
22  body of water, et cetera.
23       I've been to the site, Your Honor, and I've seen
24  photographs of what this place looked like.  This was literally
25  tilled farmland.  This was land that, when you go there, looks

1  to a layperson like a field.  It doesn't have attributes that
2  would lead one to believe that it actually amounts to a
3  wetland.
4      What we see in the case law is the circumstances in which
5  a lack of mens rea is allowed where it should be assumed that
6  someone would know.  It should be assumed that they're
7  dealing -- when they're dealing with sewage, when they're
8  dealing with chemicals, that they're held to a higher standard.
9  This isn't a case involving dirt deposited onto what appears to
10 be farmland.  And it can't be that a person can go to prison
11 for several years without proof that that person was aware of
12 the attributes of the land that would make it qualify as a
13 wetland.
14     We're not asking for proof that he was aware that the
15 legal definition -- of what the legal definition was and that,
16 as a result of that, it was a wetland.  All we're asking for is
17 that he was aware of the attributes of the land that would make
18 it a wetland.  That's not an unreasonable thing to do.  And, in
19 fact, it's the Government that's asking for something unusual
20 here.  There's a presumption that mens rea is required as to
21 the relevant elements of an offense.
22     So the Government is seeking a public welfare offense
23 instruction which eliminates all of that.  The cases that have
24 allowed that it's understandable, in light of the facts.  These
25 facts are entirely different and outside the norm.  There's

1 circumstances that we don't see in criminal cases, and it's for
2 that reason that we're asking for this entirely reasonable
3 instruction.  And it's one that is not foreclosed by *Robertson*,
4 by any means.
5         **THE COURT:**  All right.  Next argument.
6         **MR. SMOCK:**  So with respect to adjacency, *Robertson*
7 did not involve a case -- a situation in which we had wetlands
8 that were adjacent to a traditional navigable waterway.  So our
9 position is the case doesn't control in that front.  This gets
10 back to what adjacency really means and goes back to
11 *Riverside Bayview*.
12     And the logic in that case related to the fact that these
13 are situations in *Riverside Bayview* where the wetland --
14 there's no clear distinction between the wetland and the open
15 waterway.  And under those factual scenarios, the Court
16 indicated that, okay, it might be reasonable to say that when
17 land is abutting a open waterway, then it could be
18 jurisdictional.  The problem we see in the case law in part is
19 courts have been lazy with the use of these terms.  You see
20 interchangeable use of "adjacency" and "abutting."
21     When you look at Justice Kennedy's reasoning in *Rapanos*,
22 what he's speaking of is the effect that wetlands have on
23 waters and the fact that wetlands can filter water, that they
24 can actually -- water goes through them and into waterways, and
25 the effect, the impact they can have on waters of the United

1   States.  If you eliminate that and simply say, *If there's some*
2   *barrier that's referred to as a berm or a levee, that that's*
3   *automatically jurisdictional*.  You eliminate any of his
4   concerns and his focus on the impact that wetlands have on
5   waters of the United States.
6       I mentioned last time that there has to be some inquiry
7   into the nature of this barrier.  If the barrier is utterly
8   impermeable, it can't possibly be that that fits
9   Justice Kennedy's reasoning for allowing jurisdiction in a case
10  like this.  There has to be some determination that there's a
11  significant nexus.  And that's why our position is, given
12  Kennedy's opinion, given *Robertson*, there has to be a
13  determination that there's a significant nexus across the
14  board, whether it's adjacent to a tributary, adjacent to a
15  water.  There has to be a significant nexus.
16      And, in fact, when you look at the instructions in
17  *Robertson*, that's what they did.
18          **THE COURT:**  All right.
19          **MS. HANSEN:**  And then I was going to address the
20  expert issue, Your Honor, that the Government addressed.
21      I think what the -- I would turn the Court to is
22  Footnote 5, which confirms that the issue that was not decided
23  and the Court seems to invite the issue for a future case,
24  which will probably be ours, *Robertson* does not assert that
25  Tillinger, the expert, improperly testified on the ultimate

1  issue of law.  His argument appears to be that the law is
2  unclear, and it was improper for an expert to testify about it
3  because it was unclear.
4       And so *in Robertson*, the defense lawyers did not raise the
5  issue we're raising here.  And *Robertson* cites to cases that we
6  cite with approval*.  Weitzenhoff*, for example, was cited where
7  the Court explained that it is the judge's decision and the
8  judge's purview to give the law to the jury for them to decide
9  in these legal issues.
10      Given Footnote 5, Your Honor, it cannot be said that
11 *Robertson* supports the Government's reading.
12          **THE COURT:**  What is your read of what Footnote 5
13 means?  Essentially, the Court says, as I read it, the district
14 court, not an expert witness, instructs the jury on what the
15 law is and says that in that case the jury was given clear
16 instructions on the elements and the meaning of the term
17 "waters of the United States."
18          **MS. HANSEN:**  Right.
19          **THE COURT:**  And so whether -- whether the argument
20 was that the law was unclear, I'm not sure what distinction
21 you're drawing, what -- what issue was not addressed by the
22 combination of the instruction on the term "waters of the
23 United States" and the expert's testimony?
24          **MS. HANSEN:**  There was no objection to the expert's
25 testimony to being ultimate issue of law.  If it had been, it

1  seems that what the *Robertson* Court is saying is that would
2  have been a different issue.  Instead, the lawyers in *Robertson*
3  merely argued that the law was unclear.  And the Court
4  disagreed with that and said, *No, it was clear*, because the
5  district court clearly gave the law to the jury.
6       And so what it seems is implied here by this footnote is,
7  had the defense lawyers raised this issue, that it would have
8  been improper for the experts to testify on ultimate issues of
9  law.
10            **THE COURT:**  I don't see that inference.  I agree with
11 you that maybe the Court has to decide that issue in this case,
12 and that'll be what it'll be.  But I don't -- I don't infer
13 from that footnote that testimony combined with a jury
14 instruction would have been problematic.  I understand that's
15 your argument.
16            **MS. HANSEN:**  And also the Court does reject the
17 guidance manual, which we cited to as explaining the problems
18 with it is that it goes too far in providing legal analysis,
19 and it was another basis for which we felt that the experts'
20 testimony went too far into opining about legal issues.
21      So coupled with Footnote 5 and the Court's holding with
22 respect to the manual, we think supports our arguments and
23 where we felt the Court was going at the last hearing with
24 respect to ultimate issues of law as being improper for an
25 expert to give.

1    **THE COURT:** All right. Well, it -- I believe in
2  *Robertson* there was an instruction as to the meaning of "waters
3  of the United States"; right?
4    **MS. HANSEN:** Yes.
5    *Robertson* doesn't say it was appropriate for the experts
6  to rule -- to say what the water of the United States is,
7  because that was not objected to by defense counsel. And, as a
8  result, the Ninth Circuit put a footnote in saying that's not
9  the issue we're having here of whether these were ultimate
10 issues of law as *Nationwide* instructs is not appropriate.
11   **THE COURT:** All right. So I'll have to decide if
12 that is within the scope or not.
13   **MR. KEARNEY:** Your Honor, just on that last issue
14 counsel raised, Footnote 5 is on page 22 of *Robertson*. The
15 very next page, page 23, the Ninth Circuit makes it very clear
16 that it reviewed Mr. Tillinger's testimony. This is the expert
17 who opined on the "water of the United States" issue.
18   Quoting from the opinion, "It does not matter which source
19 of authority" -- and there's a parenthetical -- "binding
20 regulations or enforcement guidelines that lack the force of
21 law Tillinger used in evaluating waters and wetlands because it
22 is the jury using the instructions provided by the judge that
23 ultimately determines whether the creek and wetland at issue
24 are waters of the United States."
25   What that tells us -- what the quote tells us is what the

Case 4:16-cr-00107-HSG   Document 291   Filed 04/04/19   Page 17 of 19

17

Government has been saying in its papers all along.  First of all, the Ninth Circuit reviewed -- reviews evidentiary issues for abuse of discretion.  They clearly looked at what Mr. Tillinger testified to here and found no problem with it because they affirmed the conviction.

I don't want to litigate what we've already written in our papers, but this whole ultimate issue contention raised by defense is dealt with directly by Federal Rule of Evidence 704(a), and this -- and very briefly in response to initial arguments by counsel, if I may, sir.

So now we have the characterization of at least two Ninth Circuit opinions and two Supreme Court decisions as lazy, and we now have a new test in nature of the barrier test being proposed, which is not -- doesn't comport with any published authority that I'm aware of in this country.

The fact that this was dirt and farmland is simply not true.

**THE COURT:** All right.  So I truly don't, at this juncture, need to resolve any disputed factual issues.

**MR. KEARNEY:** All right.  We would submit, sir.

**THE COURT:** All right.  Anything further?

**MS. HANSEN:** Your Honor, if the Court does rule against the knowledge, we would want to submit an offer of proof to preserve the issue for appeal of what facts we would have presented at trial in our case in chief with respect to

1  that.  I'm wondering when the Court would want something like
2  that.  Before trial?
3         **THE COURT:**  I suppose.
4         **MR. KEARNEY:**  Your Honor, there's significant
5  evidence that the defendant had anything but a clear innocent
6  mens rea.  The locks were cut on this land.  This was a
7  trespass --
8         **THE COURT:**  But all they're saying is why -- why
9  would I not let them put whatever they want to in the record,
10 so when they go to appeal they can have a record?  I just don't
11 see any downside to that at all.
12        **MR. KEARNEY:**  Well, the only --
13        **THE COURT:**  And then the evidence will get put on at
14 the trial, and you'll get a conviction or you won't.  But I
15 struggle to see how -- why you would object to them putting the
16 offer of proof in the record so it's part of the record?  And
17 then if -- as you seem to be saying, the offer of proof and the
18 facts in it wouldn't make a difference based on the way the
19 evidence comes in, then that'll be clear for the record.
20        **MR. KEARNEY:**  Fair enough, sir.  We'll withdraw our
21 objection.
22        **THE COURT:**  All right.  So, Ms. Hansen, you can
23 submit that whenever you'd like.
24        **MS. HANSEN:**  Thank you, Your Honor.
25        **THE COURT:**  All right.  Anything else?

1           **MR. KEARNEY:**  No, Your Honor.
2           **THE COURT:**  All right.  So I'll -- everything is
3  under submission.  I'll get you a ruling as soon as I can.
4           **MR. KEARNEY:**  Thank you, sir.
5           **MS. HANSEN:**  Your Honor, we might look this over and
6  decide to reply, if necessary.
7      May we do that within a week?
8           **THE COURT:**  Yes.
9           **MS. HANSEN:**  Thank you.
10               (Proceedings adjourned at 2:27 p.m.)
11                           ---o0o---
12
13
14  I certify that the foregoing is a correct transcript from the
15  record of proceedings in the above-entitled matter.
16
17  Dated:  April 4, 2019
18
19          _____
20          Sarah L. Goekler, CSR 13446, RMR, CRR, CCRR
21                  Pro Tem Court Reporter
22
23
24
25