GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California
ANGELA M. HANSEN
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:   (510) 637-3500
Facsimile:   (510) 637-3507
Email:         Angela_Hansen@fd.org

Counsel for Defendant LUCERO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES LUCERO,<br><br>Defendant. | **Case No.:** CR 16–00107 HSG<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

This Court is familiar with the long history of this case.  The litigation has been extensive, and the parties have not agreed on any legal or factual issue until now.  Seven years after the offense conduct, the parties jointly ask the Court to sentence Mr. Lucero to one year of felony probation and to accept a binding plea agreement in which Mr. Lucero will admit to a single violation of the Clean Water Act ["CWA"].  The parties ask that the Court impose this requested sentence immediately after Mr. Lucero's change of plea hearing.

1

**SENTENCING GUIDELINES**

2

The advisory guidelines are set forth in the parties' plea agreement, which was submitted to the

3

Court on October 14, 2021.  Mr. Lucero is at an adjusted offense level 13 and in Criminal History

4

Category II.  He faces an advisory sentencing range of 15 to 21 months.[1]

5

**DISCUSSION**

6

The government initially indicted Mr. Lucero in March 2016 for two counts of violating the

7

CWA in 2014.  Dkt. 1.  At the time of the conviction conduct, the property at issue in this case was

8

slated to be developed with a golf course and housing, including construction on the charged

9

wetlands.  *See* Ex. 2006.  In September 2016, Mr. Lucero moved to dismiss based on pre-indictment

10

delay, arguing under the Due Process Clause that he suffered actual prejudice from the nearly-two-

11

year delay between the charged conduct and the indictment because he was "unable to assess Area 4

12

as it existed at the time of the offense to challenge the government's basis for federal jurisdiction."

13

Dkt. 18 at 12.[2]  The Court denied the motion because Mr. Lucero's "claim of prejudice is

14

speculative." Dkt. 32 at 3.

15

In January 2017, the government filed a superseding indictment alleging three violations of the

16

CWA, two of which relied on different jurisdictional bases than the original charges.  Dkt. 39.  After

17

the Court denied Mr. Lucero's motion to dismiss the superseding indictment, Dkt. 78, and extensive

18

pretrial litigation around discovery, experts and jury instructions, Mr. Lucero went to trial in February

19

2018.  The Court denied his request for a knowledge instruction for the "waters of the United States"

20

["WOTUS"] element of the CWA offenses.  Dkt. 109.  The jury found him guilty.  Dkt. 218.

21

The Court imposed sentence on February 25, 2019.  The Court sentenced Mr. Lucero to 30

22

months in custody.  Dkt. 274.  At sentencing, the government conceded that the fill material had not

23

been removed and may not be removed, and the wetlands have grown back.  Between 2015 and

24

sentencing, there had not been any communication between the EPA or Army Corps of Engineers

25

and the landowners about removing the fill.  As a result, the government ultimately declined to seek

26

27

[1] This advisory range is lower than the range Mr. Lucero faced at his sentencing in 2019 because with this agreement he receives a three-level downward adjustment for acceptance of responsibility.

28

[2] Page numbers of docketed materials refer to the PDF page number.

DEFENDANT'S SENTENCING MEMO
*LUCERO*, CR 16–00107 HSG

2

1    any restitution from Mr. Lucero.  Dkt. 305.

2        On March 4, 2021, the Ninth Circuit reversed Mr. Lucero's CWA convictions and remanded

3    for a new trial.  *United States v. Lucero*, 989 F.3d 1088, 1091 (9th Cir. 2021).  It held that "the

4    knowledge requirement imposed by [33 U.S.C.] § 1319(c)(2)(A) compels the government to prove . .

5    . that a defendant knew he discharged a substance 'into water.'"  *Id.* at 1097.  The instructions at his

6    trial did not encompass this knowledge requirement, *id.* at 1100, and the error was not harmless:

7    "The record evidence that Lucero knew he discharged into water is both underwhelming and

8    contested."  *Id.*; *see also id.* at 1091 (referring to fill site as "dry land"); *id.* at 1092 ("the record is

9    bereft of . . . evidence about whether Lucero would have known that the sites were inundated with

10   water, rather than dry land").  Contrary to every other criminal CWA case on record, Mr. Lucero had

11   not been told or given any other kind of notice that the property might be subject to the CWA.

12   Moreover, as the Ninth Circuit noted, this case was an "oddity" because Mr. Lucero deposited solid

13   fill material on "dry land."  *Id.*

14       The Ninth Circuit's opinion requires the government at retrial "to prove that Lucero knowingly

15   discharged fill material 'into water.'"  *Id.* at 1101.  Thus, to prepare for a retrial, the parties would

16   have to develop new evidence about Mr. Lucero's knowledge of the condition of the site at the time

17   of the offense -- seven years ago.  For a retrial, the Court also would have to interpret the new "into

18   water" requirement.  The parties have disputed the definition of "water" required by the Ninth

19   Circuit's opinion, and both parties submitted briefing on the appropriate definition that should be

20   adopted for a retrial.  Dkt. 328, 330.

21       With this complicated legal framework in mind, the parties now reach this negotiated

22   disposition and sentence.  With the Ninth Circuit's remand, there are factual and legal complications

23   regarding the definitions at play.  As a result, there are litigation risks for both sides, and the

24   negotiated sentence takes into account these risks.

25       The parties' proposed sentence takes into account the seriousness of the offense conduct as

26   well.  Certainly, some CWA offenses that are prosecuted as criminal felonies are serious and

27   dangerous.  But Mr. Lucero did not re-route discharge from a hazardous-waste treatment plant into

28   obvious waters such as the ocean.  His conduct did not cause any physical harm to any person.  He

dumped non-toxic fill and dirt on private property that the landowners had planned to fill and develop, and during the litigation the wetlands grew back over the fill material because the landowners temporarily ceased its mowing and disking.  Moreover, the prosecution in this case shifted its theories, and the responsible agencies followed the will of different presidential administrations in redefining the scope of the CWA.  *See Lucero*, 989 F.3d at 1104 (noting that "waters of the United States" "regulation has been revised several times").  In its current iteration, which will likely be modified again by the new administration, the CWA covers fewer waters and -- at least arguably -- not all the "waters" onto which Mr. Lucero deposited fill.  *See id.* (noting that current version of regulation, "substantially narrowed the definition of 'waters of the United States' (and, in turn, the scope of the Clean Water Act.")); 33 C.F.R. § 328.3 (defining what are and are not "waters of the United States").  For these reasons, the nature of the offense conduct in this case supports the proposed disposition.

Moreover, the requested sentence provides an appropriate punishment for this conduct.  Mr. Lucero will be convicted of a felony violation of the CWA, and he will be required to serve a curfew on home detention.  A year of supervised probation is also a significant sentence given that Mr. Lucero has already been on pretrial supervision for more than five years.

The years of delay have been a source of tremendous stress for Mr. Lucero.  He has remained under the cloud of a criminal prosecution for more than five years now, not knowing if or when he would be required to serve a custodial sentence.  By superseding the indictment in this case in 2017 with new charges based on novel mapping created by new experts, the government dramatically prolonged this case,[3] and proceeding to trial in 2022 on a third superseding indictment would only result in more years of stress for Mr. Lucero while the parties continued to litigate the complexities of the CWA.

---

[3] For example, after obtaining the superseding indictment in January 2017, Dkt. 39, the government did not disclose for another five months, Dkt. 51, the new 103-page expert report (supported by 698 pages of appendices) on which it was based.  *See* Dkt. 52; Dkt. 59 (acknowledging that report was disclosed in June 2017).  In the three months before the initially scheduled September 2017 trial date, the government disclosed more than 11,000 pages of new discovery based on the new expert report, leading to a six-month postponement of the trial.  *See* Dkt. 53; Dkt. 62 (setting February 2018 trial).

1    Mr. Lucero is ready to move on with his life.  He is planning to marry his fiancé of many years,

2    Nicole Dawson, next month.  He has a new grandchild and, after being vaccinated, he has been able

3    to reconnect with his family and his community.  He respectfully asks this Court to accept the parties'

4    binding agreement and allow him to finally put this case behind him.

5                                        **REQUESTED SENTENCE**

6    For all the reasons set forth above, the parties agree that the Court should impose a sentence of

7    one year of probation with the special condition that Mr. Lucero serve six months of a curfew on

8    electronic home monitoring.  The parties request a curfew so that Mr. Lucero can continue to work

9    without interruption.  The parties reached out to the probation office, which provided the appropriate

10   language for this special condition:

12           You must participate in the Location Monitoring Program as directed by
             the probation officer for a period of 180 days beginning on a date after
13           November 16, 2021, and be monitored by Location monitoring technology
             at the discretion of the probation officer. Location monitoring must be
14           utilized to verify your compliance with a curfew while on the program.
             You are restricted to your residence every day during curfew hours as
15           directed by the probation officer. You must pay all or part of the costs of
             the program based upon your ability to pay as determined by the probation
16           officer.

17   Restitution is not an issue in this case.  After Mr. Lucero's 2019 sentencing hearing, the

18   government declined to seek any restitution from Mr. Lucero.  Dkt. 305.  Nor does the government

19   seek a fine.  In imposing the mandatory $100 special assessment, Mr. Lucero asks the Court to note

20   that he already paid the $300 special assessment from his 2018 conviction.  Dkt. 308.  He asks that

21   the Court order that the clerk's office return $200 to him.  Because Mr. Lucero does not face any

22   financial penalties or restitution that would warrant the special financial conditions of probation listed

23   in the original judgment (Dkt. 274, at 5; special conditions 1-3), these conditions are unnecessary and

24   should not be included in the final judgment.

Dated:     October 15, 2021

Respectfully submitted,

GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California

/S

ANGELA M. HANSEN
Assistant Federal Public Defender